Marc A. Lieberman, Esq. (Bar No. 157318)
Alan W. Forsley, Esq. (Bar No. 180958)
**FREDMAN LIEBERMAN PEARL LLP**
1875 Century Park East, Suite 2230
Los Angeles, California 90067
Telephone:    (310) 284-7350
Facsimile:    (310) 432-5999

Attorneys for plaintiff Nationdom, Inc.

# UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | )Case No. 8:19-bk-14912-TA |
| | ) |
| IGOR SHABANETS | )Chapter 7 |
| | ) |
| | )Adv. Proc. No. 8:21-ap-_____-TA |
| Debtor. | ) |
| _____ | ) |
| | )**COMPLAINT FOR DECLARATORY** |
| NATIONDOM, INC., | )**RELIEF REGARDING ENTITLEMENT** |
| | )**TO PAYMENT ON PROOFS OF CLAIM** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VIBE MICRO, INC., a Nevada | ) |
| corporation; Edward Mandel, an | ) |
| individual; Samuel Mandel, an individual; | ) |
| Irene Mandel, an individual; Michael Jay | ) |
| Berger, d/b/a The Law Offices of Michael | ) |
| Jay Berger, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

Plaintiff Nationdom, Inc. ("**Nationdom**") files this declaratory relief action for the

Court to determine whether Nationdom is entitled to be paid on proofs of claim filed in this

case by alleged creditors Vibe Micro, Inc. ("**Vibe Micro**"), Edward Mandel, Samuel Mandel, and Irene Mandel, and whether a lien asserted by Michael Berger d/b/a The Law Offices of Michael Jay Berger on Vibe Micro's proof of claim takes priority over any amounts to be paid to Nationdom.

## **JURISDICTION**

1.      On December 21, 2019, debtor Igor Shabanets ("**Debtor**") filed a voluntary petition under Chapter 11 of title 11 of the United States Bankruptcy Code commencing Case No. 8:19-bk-14912-TA (the "**Bankruptcy Case**").

2.      On February 10, 2020, the Bankruptcy Case was converted to Chapter 7. On February 11, 2020, Richard Marshack was appointed the Chapter 7 Trustee (the "**Trustee**") in the Bankruptcy Case.

3.      Jurisdiction of the United States District Court for the Central District of California over this adversary proceeding is founded on 28 U.S.C. §§ 1334(b) and (d) in that it arises in or is related to the Bankruptcy Case.

4.      This action is a "core proceeding" which may be referred to the United States Bankruptcy Court pursuant to title 28 U.S.C. § 157(b) because it is a proceeding to determine whether Nationdom is entitled to any of the payments the Trustee may make on proofs of claims filed by defendants in the Bankruptcy Case. Federal Rule of Bankruptcy Procedure 7001(a)(2) also states an adversary proceeding is necessary "to determine the validity, priority, or extent of a lien or other interest in property ....," which presumably includes whether a lien has been placed on a proof of claim and who is entitled to payment on a proof of claim. The Court also has jurisdiction because this is a matter concerning the administration of Debtor's bankruptcy estate (i.e., who the Trustee is to pay on the claims) the priority and amount. 28 U.S.C. § 157(b)(2)(A).

5.      This action has been so referred by operation of General Order 266 of the United States District Court, Central District of California.

///

1

**VENUE**

2

6.    Venue of this action is proper under 28 U.S.C. § 1409 in that it arises in and

3

relates to the Bankruptcy Case.

4

5

**THE PARTIES**

6

7.    Plaintiff Nationdom is a creditor of defendants Vibe Micro, Edward Mandel

7

("**Edward**"),[1] Samuel Mandel ("**Samuel**"), and Irene Mandel ("**Irene**").

8

8.    Defendant Vibe Micro is an alleged creditor in the Bankruptcy Case.   On

9

April 29, 2020, Vibe Micro filed proof of claim No. 14 for $6,125,617.11 based upon a

10

judgment it obtained against Debtor and other parties in the 17th Judicial Circuit in and for

11

Broward County Florida, entitled *Sig Capital, Inc. v. Vibe Micro, Inc.*, Case No. CACE 14-

12

023928

13

9.    Defendant Samuel is an alleged creditor in the Bankruptcy Case.   On May

14

22, 2020, Samuel filed proof of claim No. 24 for $84,563.00.   The claim is based upon

15

pending causes of action Samuel has against Debtor in the 17th Judicial Circuit in and for

16

Broward County Florida, entitled *Mandel et al. v. CallMD.Com, Inc. et al.*, Case No.

17

CACE 14-0077971 (the "**CallMD Case**").

18

10.    Defendant Irene is an alleged creditor in the Bankruptcy Case.   On May 22,

19

2020, Irene filed proof of claim No. 25 for $192,250.00.   The claim is based upon pending

20

causes of action Irene has in the CallMD Case.

21

11.    Defendant Edward is an alleged creditor in the Bankruptcy Case.   On May

22

22, 2020, Edward filed proof of claim No. 26 for $432,000.00.   The claim is based upon

23

pending causes of action Edward has in the CallMD Case.

24

12.    Defendant Michael Jay Berger, d/b/a The Law Offices of Michael Jay Berger

25

("**Berger**") is a former attorney for Vibe Micro and on February 26, 2021 filed a notice of

26

27

---

28

[1] First names are used because many defendants have the same last name.   No disrespect is
intended.

lien for the reasonable attorney's fees, expenses, and advances he performed or advanced on behalf of Vibe Micro.

## **GENERAL ALLEGATIONS**

**A.    The Litigation Finance Agreement.**

13.    On August 28, 2017, Nationdom entered into a Litigation Finance Agreement with Vibe Micro, Edward, Samuel and Irene (the "**Litigants**") to fund the Litigants' litigation against Debtor and others in the following cases:

(i)    *Vibe Micro et al v. Shabanets et al.*, United States District Court, Southern District of Florida, Case No. 9:15-cv-80999;

(ii)    The appeal of *Vibe Micro v. Shabanets et al.,* Case No. 16-15276-A to the 11th Circuit;

(iii)    The arbitration of *Vibe Micro v. 8Speed8, Inc. et al.*, situated in Broward County Florida;

(iv)    Litigation in the *In re 8Speed8, Inc.*, United States Bankruptcy Court, District Nevada, Case No. BK-S-13-20371-LED;

(v)    The appeal of *Vibe Micro v. Sig Capital, Inc. et al.*, United States District Court, District of Nevada, Case No. 14-cv-01618-RFB;

(vi)    The appeal of *Vibe Micro v. Sig Capital, Inc. et al.*, United States Court of Appeals for the Ninth Circuit, Case No. 17-16277;

(vii)    Litigation of *Vibe Micro, Inc. v. Snell & Wilmer, LLP et al.*, United States District Court, District of Nevada, Case No. 2:16-cv-01531-MMD;

(viii)    Litigation in the CallMD Case; and

(ix)    Any "refiling, counterclaim, appeal, settlement, enforcement action, arbitration or other action related to any of these lawsuits, whether primary, ancillary or parallel" (collectively the "**Litigation Cases**").  Attached as **Exhibit "1"** is a copy of the Litigation Finance Agreement.

14.     The Litigation Finance Agreement also allowed parties to obtain a Litigation Proceed Right which is the right to receive (1%) of the Net Proceeds which are the proceeds remaining after all of the attorney's fees and costs for a particular matter and the litigation funders were paid in full.  The maximum litigation right is 100 which represents 100% of the Net Proceeds.

15.     The Litigation Finance Agreement confirmed that Nationdom initially advanced $182,000 to the Litigants.

16.     Thereafter, Nationdom funded and additional $133,439.90 to Litigants for a total funded amount of $315,439.90.

17.     The Litigation Agreement states how monies received from the Litigation Cases are to be distribute to attorneys, Nationdom, subsequent funders, the Litigants and to those who have a Litigation Proceed Right.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief against defendants Vibe Micro and Berger)

18.     Plaintiff incorporates herein by reference paragraphs 1 through 17 above as though set forth fully herein.

19.     The Litigation Finance Agreement states monies recovered under the Vibe Micro judgment are to be paid in the following order (i) the attorney's fees and costs incurred to prosecute the claim, (ii) to Nationdom to reimburse it for monies it loaned Litigants, (iii) monies loaned by any subsequent funders, (iv) attorney's fees and costs paid by the Litigants, and (v) then finally payment to persons holding Litigation Proceed Rights.

20.     On May 4, 2020, Nationdom sent a letter to Berger requesting that Vibe Micro stipulate to pay Nationdom any distribution on Vibe Micro's claim prior to Vibe Micro receiving any payments, but Nationdom did not receive a response.

21.    An actual controversy has arisen as to who is entitled to payment of any monies on Vibe Micro's proof of claim, the order of priority for such payments, and the amounts to be paid.

22.    Plaintiff seeks a declaration of its rights under the Litigation Finance Agreement as to whether it is entitled to payment on Vibe Micro's proof of claim, and the priority over Vibe Micro, Berger and other parties, and the amount of that payment.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief against Samuel, Irene and Edward)

23.    Plaintiff incorporates herein by reference paragraphs 1 through 17 above as though set forth fully herein.

24.    The Litigation Finance Agreement states monies recovered under a CallMD.Com judgment or award are to be paid in the following order (i) the attorney's fees and costs incurred to prosecute the claim, (ii) the amount awarded to Samuel for the "cancelled or worthless check count, up to $50,000," (iii) to Nationdom to reimburse it for monies it loaned Litigants, (iv) monies loaded by any subsequent funders, (v) attorney's fees and costs paid by the Litigants, and (vi) then finally payment to persons holding Litigation Proceed Rights.

25.    An actual controversy has arisen as to who is entitled to payment of any monies on the Samuel, Irene and Edward proofs of claim, the order of priority for payment, and the amounts to be paid.

26.    Plaintiff seeks a declaration of its rights under the Litigation Finance Agreement as to whether it is entitled to payment on Samuel, Irene and Edward's proofs of claim, the priority over Samuel, Irene and Edward, and others, and the amount of that payment.

///

///

///

**WHEREFORE**, Plaintiff prays for judgment in favor of Nationdom and against defendants as follows:

**AS TO THE FIRST CAUSE OF ACTION:**

1.      For entry of judgment/order declaring to whom the Trustee is ordered to pay any amounts paid on Vibe Micro's proof of claim, the priority of those payments, and the amounts.

**AS TO THE SECOND CAUSE OF ACTION:**

1.      For entry of judgment/order declaring to whom the Trustee is ordered to pay any amounts paid on the Samuel, Irene and Edward proofs of claim, the priority of those payments, and the amounts.

**AS TO BOTH CAUSES OF ACTION:**

1.      For costs of suit; and

2.      For such other and further relief as the court deems just and proper.

DATED: August 25, 2021                     FREDMAN LIEBERMAN PEARL LLP


By: _____
Marc A. Lieberman, Esq.
Alan W. Forsley, Esq.
Attorneys for Plaintiff Nationdom, Inc.

# EXHIBIT 1

0008

## Litigation Finance Agreement

This Litigation Finance Agreement (Agreement) is dated as of August 2_8_ 2017 (Effective Date), and is by and between Nationdom, Inc. (Funder) and Edward Mandel, Irene Mandel, Samuel Mandel, and Vibe Micro, Inc. (Plaintiffs).

**WHEREAS,** Plaintiffs have valid and substantial claims against defendants in certain matter listed in the definition of "Claims" in section 1.0, below.

**WHEREAS,** the parties agree that, as of the Effective Date, Funder has advanced the sum of at least Two Hundred Thousand Dollars ($182,000.00) to Plaintiffs for the Claims, and Plaintiffs have advanced approximately Two Hundred Thousand Dollars ($215,000.00) in furtherance of the Claims.

**WHEREAS,** some or all of the parties acknowledge having previously entered into a "Litigation Funding Agreement," which is hereby replaced by this Agreement.

**WHEREAS,** Funder wishes to continue to invest with Plaintiffs to facilitate the prosecution of their Claims and to profit if any of the Claims are successful.  Funder agrees that its financing is ultimately nonrecourse; the litigation proceed rights it shall purchase represent no value if there are no proceeds from any of the litigation.

**NOW, THEREFORE,** it is agreed as follows:

**1.0 Definitions**

Award: The total monetary amount owed Plaintiffs on account of, or as a direct or indirect result of, a Claim, whether direct or derivative, by negotiation, arbitration, mediation, lawsuit, judgment, settlement, or otherwise. For the avoidance of doubt, "Award" includes both cash and the monetary value of non-cash assets at the time the Award is paid, and it excludes the value of injunctive, declaratory, or other non-monetary relief.

Claim (or collectively, Claims): The following lawsuit(s) filed by one or more of Plaintiffs:
- *Vibe Micro, Inc., 8Speed8, Inc., Edward Mandel v. Shabanets, et al.*, Case No. 9:15-cv-80999 (S.D. Fla. 2016), on appeal as *Vibe Micro, Inc. et al. v. Shabanets, et al.*, 16-15276-A (11th Cir.) (Florida Federal Cases);
- *In re Arbitration of Vibe Micro, Inc., as shareholder of 8Speed8, Inc. v. 8Speed8, Inc., and SIG Capital, Inc.*, situated in Broward County, Fla.;
- *In the Matter of 8Speed8, Inc.*, Case No.  13-2037 (Bankr.  D.  Nev.), on appeal as *8Speed8, Inc. and Vibe Micro, Inc. v. Snell & Wilmer, LLP, Igor Shabanets, SIG Capital, Inc., Luxor Entertainment, LLC, Karla Guarino, Payteller, LLC and the United States Trustee*, Case No.  2:16-CV-01531-MMD (D.  Nev.), and the Rule 9011 sanction proceeding; and

EXHIBIT    1

0009

- *Mandel v. Callmd.com, Inc.,* Case No. 14-007971 (Broward County, Fla.) (Callmd.com Case)

and any refiling, counterclaim, appeal, settlement, enforcement action, arbitration, or other action or process related to any of these lawsuits, whether primary, ancillary, or parallel.

<u>Committed Capital</u>: Any amounts pledged to finance the conduct of the Claims.

<u>Common Interest Material</u>:  Any discussion, evaluation, negotiation, and any other communication and exchanges of information relating to the any of the Claims in any way, whether written or oral, between or among Plaintiffs, Litigation Counsel, Funder, and/or Funder's Representatives, *provided* that such communication would be protected by attorney–client privilege between Litigation Counsel and Plaintiffs, work-product doctrine, or other discovery protection if not disclosed to a third party lacking a common legal interest.

<u>Conclusion of a Claim</u>: The final resolution of a Claim, whether by settlement, the entry of a non-appealable final judgment against Plaintiffs, or the enforcement of a final, non-appealable judgment in favor of Plaintiffs.

<u>Confidential Information</u> shall mean:  (i) the Common Interest Material; (ii) this Agreement, including:  (a) its existence and the existence of the financing it provides; (b) its terms; (c) the parties to it; and (d) any discussions and negotiations related to this Agreement, including drafts of this Agreement; (iii) to the extent not already covered as Common Interest Material, the Claims, including: (a) the information, of any type, relevant to understanding the Claims; (b) the parties', Litigation Counsel's, or Funder's Representatives' strategies, tactics, analyses, or expectations regarding any Claim or Award; and (c) any professional work product relating to any of Claim or Award, whether prepared for Plaintiffs, Litigation Counsel, Funder, or Funder's Representatives.

Notwithstanding the foregoing, information is not Confidential Information that (a) was or becomes generally available to the public other than by breach of this Agreement; (b) was, as documented by the written records of the receiving party, known by the receiving party at the time of disclosure to it or was developed by the receiving party or its representatives without using Confidential Information or information derived from it; (c) was disclosed to the receiving party in good faith by a third party who has an independent right to such subject matter and information; or (d) is required to be disclosed by law.

<u>Costs</u>:  The expenses incurred by or on behalf of Plaintiffs for conducting the Claims and complying with the terms of this Agreement and include:  professional fees, whether for attorneys, advisors, experts, or witnesses; and procedural fees and costs relating to court, arbitration, or other process, including filing and arbitrator fees; provided that the amounts in each case are approved by Litigation Counsel.

<u>Defendants</u>: The named Defendants in the Claims listed above.

<u>Exiting Funder</u>: A Funder that decides to stop funding the Claims prior to the Conclusion of the Claims.

<u>Funder</u>: Nationdom, Inc.

<u>Funder's Representatives</u>: Robert W. Pittman, P.A., 1001 Brickell Bay Drive 9th Floor, Miami, Florida 33131, and any successor counsel or supplemental counsel Funder retains to represent its interests regarding the Claim and this Agreement.

<u>Independent Counsel</u>: Evan H. Berger, Esq. and any successor or supplemental counsel retained by Plaintiffs to advise on this Agreement's terms, amendments, and assignments, on settlement proposals and on privilege issues. Such counsel has and shall have no direct or indirect economic relationship with Funder prior to the Conclusion of the Claim.

<u>Investment</u>: The total amount of money advanced by Funder (agreed by the parties to be fixed at $182,000.00 as of the Effective Date of this Agreement) towards Costs which has not otherwise been repaid from the Proceeds of an Award.

<u>Litigation Counsel</u>: Kathleen S. Phang, Esq. of Berger Singerman LLP (*Mandel v. Callmd.com, Inc.*); Barney C. Ales, Esq. of Barney C. Ales, LTD (*In the Matter of 8Speed8, Inc.; and 8Speed8, Inc. v. Snell & Wilmer, LLP*); Torrence E. S. Lewis, Esq. of the Law Offices of Torrence E. S. Lewis (*Vibe Micro, Inc. et al. v. Shabanets et al.*; and on appeal), and any successor or supplementary counsel retained by some or all of Plaintiffs to conduct the Claim(s).

<u>Litigation Proceed Right</u>: The right to receive one percent (1%) of the Net Proceeds. For clarity, the total and maximum number of Litigation Proceed Rights is 100, representing 100% of the interests in the Net Proceeds.

<u>Litigation Proceed Right Certificate</u>: A document in the form of Exhibit 1, (i) reflecting ownership of a certain number of Litigation Proceed Rights; (ii) bearing a legend stating that the certificate and the rights it represents may not be transferred without the express, written consent of Plaintiffs and then only if the transferee becomes a party to this Agreement; and (iii) certifying the existence of a perfected senior security interest in the Proceeds Account and in the Claims.

<u>Net Proceeds</u>: The Proceeds remaining, if any, after first paying out the amounts specified in Sub-sections 5.2.3(a) through 5.2.3(f).

<u>Funder Payment Affidavit</u>: An affidavit signed by the CEO, President, or CFO of Funder, with a running balance of the Costs advanced by Funder to date, the Proceeds received by Funder to date, and the remaining net balance of Costs advanced by Funder (i.e., Investment balance). The affidavit shall attach proof of all the Costs advanced (e.g., copies of cashed checks, or the check numbers, recipients, and deposit dates), except for the $182,000.00 advanced prior to the date of this Agreement, which has already been stipulated hereto (*i.e.,* <u>Funder's Stipulated Costs,</u>

which will be identified as such in the Payment Affidavit and need not be itemized or supported by proof).

Plaintiffs Payment Affidavit: An affidavit signed by Plaintiffs party to the Claim for which there is an Award, with a running balance of the Costs paid directly by Plaintiffs to date, the Proceeds or other monies from Funder, if any, received by Plaintiffs to date, and the remaining net balance of Costs paid by Plaintiffs. The affidavit shall attach proof of all the Costs paid by Plaintiffs (e.g., copies of cashed checks, or the check numbers, recipients, and deposit dates), except for the $215,000.00 paid by Plaintiffs prior to the date of this Agreement, which has already been stipulated hereto (i.e., Plaintiffs' Stipulated Costs, which will be identified as such in the Payment Affidavit and need not be itemized or supported by proof).

Plaintiffs: Edward Mandel, Irene Mandel, Samuel Mandel, and Vibe Micro, Inc.

Proceeds: (i) Any and all value received to satisfy an Award, if the Award results from settlement or other negotiated agreement, and (ii) any and all value received to satisfy an Award, less any state, federal, or international taxes owed on such value, if the Award is a judgment, order, or other determination by an independent party, such as a court or arbitrator.

Proceeds Account: The respective Litigation counsel's Trust Account or sub-account in such Trust Account for depositing Proceeds, or other account agreed by Funder and Plaintiffs in writing. Plaintiffs shall not make any request for distribution of any part of the Proceeds until after the Costs advanced by Funder (i.e., Investment) have been paid to Funder, then the Costs advanced by Plaintiffs have been paid to Plaintiffs, and then Funder is paid the value of its Litigation Proceed Rights, whether from a Proceeds Account or from any other source owned or controlled by Plaintiffs. Once Funder receives the value of its Litigation Proceed Rights, Plaintiffs may dispose of any balance in any Proceeds Account as it sees fit.

Qualified Replacement Funder: A Funder which (a) agrees to become a party to this Agreement; (b) commits to continue financing the Claim under the terms of this Agreement as the Exiting Funder is withdrawing by exiting; and (c) is an Accredited Investor as defined in Rule 501 of Regulation D promulgated under the 1933 Securities Act.

**2.0  Representations and Warranties**
**2.1 Plaintiff's Representations and Warranties**
**2.1.1**  Common Interest:  Plaintiffs have received Independent and/or Litigation Counsel's advice regarding the common-interest doctrine in Florida.
**2.1.2**  Full Disclosure:  Plaintiffs represent that, as of the date of this Agreement, they have provided Funder all material information relating to the Claims, excluding information protected solely by the attorney–client privilege.
**2.1.3**  No Impairment:
**2.1.3.1** Other than as already disclosed to Funder, Plaintiffs have not taken any action (including executing documents) or failed to take any action, which (a) would materially and adversely

affect any Claim, or (b) would give any person or entity other than Funder an interest in the Award or the Proceeds.

**2.1.3.2** Plaintiffs agree and undertakes that (a) it will not institute any action, suit, or arbitration separate from any Claim arising from the same facts, circumstances or law giving rise to any Claim; (b) it will not take any step reasonably likely to have a materially adverse impact on any Claim or Funder's share of any Proceeds; and (c) it will not take any step that would give any person or entity an interest in any Claim, Award, or potential Proceeds except as otherwise permitted by this Agreement.

**2.1.4  Solvency:**  Plaintiffs have no bankruptcy proceedings outstanding or written notice of potential proceedings against it other than as expressly listed in the Claims above, and a non-dischargeable order (and associated judgments and appeals) in a bankruptcy proceeding in the Eastern District of Texas, *In re: Edward Mandel,* Case No. 10-40219 (E.D. Tex.).

**2.1.5  Independent Counsel:** Plaintiffs represent that its Independent Counsel and/or Litigation Counsel advised it about the terms of this Agreement.

**2.1.6  Completeness and Accuracy:** Plaintiffs represent that as of the date of this Agreement, (a) all material information it and Litigation Counsel provided to Funder is true and correct, and (b) all its representations and warranties in this Agreement are true and correct.

### 2.2 Funder's Representations

**2.2.1  Funds:**  Funder represents that it is fully capitalized and has and will continue to have sufficient funds available to fulfill its obligations under this Agreement.

**2.2.2  Fully Informed:**  Funder has thoroughly reviewed all the information about the Claim provided to it.

**2.2.3  No Conflicts of Interest:**

**2.2.3.1** Funder has not, as of the date of this Agreement:  (a) paid a referral fee to Litigation Counsel in connection with the Claim, Plaintiffs, or this Agreement; (b) entered any transaction with Litigation Counsel that has or would make Litigation Counsel a part owner of Funder; (c) contracted with any other party or potential party to any Claim other than has been disclosed on Schedule A; (d) engaged in negotiations with any other party or potential party to the Claim other than has been disclosed on Schedule B; or (e) entered into any relationship with Plaintiffs' Litigation Counsel or Independent Counsel that potentially conflicts with Plaintiffs' interests regarding any Claim other than has been disclosed on Schedule C.  For the avoidance of doubt, Schedule C at a minimum details Funder's history of engaging such counsel or paying such counsel referral fees, including approximate dates, total fees paid, and the nature of the engagement; and, whether such counsel has an ongoing financial connection to Funder other than those created by this Agreement or the Retainer Agreement.  Schedules A, B and C are contained in Exhibit 2.

**2.2.3.2** Funder will not, prior to the Conclusion of the Claim, pay a referral fee to Litigation Counsel in connection with the Claim, Plaintiffs, or this Agreement; transfer or agree to transfer any ownership in Funder to Litigation Counsel; or engage in any activity that would have been disclosed on Schedules A, B, or C if it had occurred as of the date of this Agreement. This provision shall survive the termination of this Agreement if the Agreement is terminated prior to the Conclusion of the Claim.

**2.2.3.3** Funder does not have a duty, contractual obligation, or other requirement to monetize its interest in any Claim within any particular time frame or which would require Funder to cease funding any Claim. For the avoidance of doubt, the preceding sentence does not: (a) include a fiduciary duty that would require Funder to cease funding the Claim because of Funder's assessment of the merits of the Claim; or (b) otherwise diminish Funder's absolute right to cease funding the Claims at any time.

**2.2.4** No Waiver of Privilege:

**2.2.4.1** As of the date of this Agreement, Funder and Funder's Representatives have not disclosed any Common Interest Material to anyone without the prior written consent of Plaintiffs; and

**2.2.4.2** Notwithstanding Subsection 4.2, Funder and Funder's Representatives shall not disclose any Common Interest Material to anyone without prior written consent of Plaintiffs. For the avoidance of doubt, this prohibition prevents disclosure without prior written consent to Funder's investors and/or any party to whom Funder wishes to transfer part or all of its interest in the Claim. If consent is given, Funder shall enter into an agreement with such secondary recipients to preserve the confidentiality of the Common Interest Material on terms no less restrictive than those set forth in this Agreement for Confidential Information. This provision shall survive the termination of this Agreement and remain in effect until the Conclusion of the Claim.

**2.2.5** Secondary Market Financing:

**2.2.5.1** Funder represents that as of the date of this Agreement it has not sold or entered negotiations to sell part or all of its interest in any Claim or the Proceeds to anyone.

**2.2.5.2** Funder will not securitize its interest in the Claim or the Proceeds.

**3.0 Additional Covenants**

**3.1 Covenants of Plaintiffs**

**3.1.1** Representations Remain True: Plaintiffs covenant that all of their representations and warranties shall continue to be true throughout the term of this Agreement.

**3.1.2** Duty to Cooperate: Plaintiffs covenant to cooperate in the prosecution of the Claims. Specifically, Plaintiffs will/or will cause their officers, executives, and employees to promptly and fully assist Litigation Counsel as reasonably necessary to conduct and conclude the Claim. For the avoidance of doubt, such assistance includes all actions any Plaintiff may reasonably expect undertaking such as: submitting to examination; verifying statements under oath; and appearing at any proceedings. The examples in the preceding sentence are illustrative and do not limit Plaintiffs' duty to cooperate in any way.

**3.1.3** Duty to Inform: Plaintiffs agree and undertake to keep Funder fully informed about the progress of the Claim. Specifically,

(a) Non-Privileged Information: Plaintiffs hereby irrevocably instruct Litigation Counsel, and if further instructions are needed, undertakes to instruct Litigation Counsel, to provide Funder's Representatives with all material non-privileged information as soon as practicable, regardless of the information's source, confidentiality, or form, unless Funder already possesses or controls such information.

(b) Attorney Work Product: Acknowledging that this Agreement contains provisions requiring the parties to protect the confidentiality of any Confidential Information disclosed to it and that such information includes attorney work product, Plaintiffs hereby irrevocably instruct their/its

Litigation Counsel, and if further instructions are needed, undertakes to instruct its Litigation Counsel to provide Funder's Representatives with all material attorney work product relating to the Claim as soon as practicable.

(c) Attorney–Client Privileged Information: Relying on the parties' agreement that they share a common legal interest and that communicating attorney–client privileged information to Funder in the furtherance of that interest does not waive the privilege, Plaintiffs undertake to share such information on a topic-by-topic basis, *provided that* neither Plaintiffs nor Litigation Counsel shall disclose attorney–client protected information to Funder or Funder's Representatives unless (i) Plaintiffs have discussed with Litigation Counsel or Independent Counsel the information to be shared, the reason for the sharing, and the probable consequences if the sharing is ultimately held to waive the privilege; and (ii) Plaintiffs have given written consent to such information sharing.

**3.1.4** No Change in Litigation Counsel Without Funder Notice: Plaintiffs agree and undertake that they will not engage a new attorney or law firm to conduct any Claim, either as replacement or supplemental Litigation Counsel, without giving Funder 20 days' prior notice and without giving good faith consideration to Funder's response, if any. For the avoidance of doubt, "engage" in the immediately preceding sentence means "execute a retainer agreement or other contract to employ such attorney or law firm."

**3.1.5** Funder Participation in Settlement Decision Making:

(a) Plaintiffs will immediately notify Funder upon receiving a settlement offer, providing Funder with the complete details of the offer in such notice. Plaintiffs will not respond to the settlement offer until after giving good faith consideration to Funder's analysis of the offer, *provided that* Funder communicates its analysis within 2 days of receiving notice of the offer.

(b) Plaintiffs will not make a settlement offer without first notifying Funder of the proposed offer, including its complete details, and giving good faith consideration to Funder's analysis, *provided that* Funder communicates its analysis within 2 days of receiving the proposed offer.

**3.1.6** Independent Counsel: Plaintiffs will obtain Independent Counsel before agreeing to any material amendment to this Agreement and before engaging replacement or supplemental counsel to conduct any Claim.

**3.1.7** Plaintiffs shall be solely responsible for, and shall hold Funder harmless and indemnify and defend Funder from, any claims for fees or costs sought by any current and/or former legal counsel of any of the Plaintiffs.

**3.2 Covenants of Funder:**

**3.2.1** Good Faith Dealings: Funder agrees it will act reasonably and in good faith toward Plaintiffs in every action Funder takes in relation to the Claim and Funders' performance under this Agreement. Notwithstanding the previous sentence, Funder's mere exercise of its right to terminate without cause, including Funder's refusal to invest further capital, shall not constitute breach of this covenant or any other provision of this Agreement.

**4.0 Common Interest and Confidentiality**

**4.1** Common Interest: Plaintiffs and Funder agree they share a common legal interest and, to the degree necessary to further their common legal interest, agree to share Common Interest

Material in accordance with the provisions of Subsections 2.2.4.2 and 3.1.3. Plaintiffs and Funder agree the material would not be shared if the common legal interest did not exist.

**4.2    Non-Disclosure Generally:** During the term of this Agreement and for 2 years following its termination, the recipient of Confidential Information shall not disclose, use, or make available, directly or indirectly, any Confidential Information to anyone, except as needed to perform its obligations under this Agreement or as the disclosing party otherwise authorizes in writing. When disclosing, using, or making Confidential Information available in connection with the performance of its obligations under this Agreement or as permitted by the disclosing party, recipient shall enter into an agreement with such secondary recipients to preserve the confidentiality of the Confidential Information on terms no less restrictive than as set forth in this Agreement. The recipient agrees that neither the execution of this Agreement nor the provision of Confidential Information thereto enables the recipient to use the Confidential Information for any purpose or in any way other than as specified in this Agreement.

**4.3    Potentially Enforceable Disclosure Requests:** If a party receives a potentially enforceable request for the production of Confidential Information, including without limitation a subpoena or other official process, that party will promptly notify the other party in writing, unless such notice is prohibited by law. If allowed, such notice shall be given before complying with the request and shall include a copy of the request.
If the request is of the recipient of Confidential Information, and notice to the disclosing party is prohibited by law, the recipient must make a good faith effort to contest the disclosure, if appropriate. The recipient shall also make a good faith effort to obtain an agreement protecting the confidentiality of the Confidential Information prior to disclosing it.
If a party elects to contest the request, no party shall make any disclosure until a final, non-appealable or non-stayed order has been entered compelling such disclosure. The contesting party shall pay its own expenses and control its contest, *provided that*, if the recipient contests a request when forbidden by law to give the disclosing party notice of the disclosure request, the disclosing party shall reimburse the recipient's reasonable expenses promptly after being notified of them.

**5.0  Funding Terms**
**5.1    Current Ownership of Litigation Proceed Rights:** In consideration of the current Funder's Investment to date, Plaintiffs will sell or otherwise issue to the current Funder fifty (50) Litigation Proceed Rights, which represents 50% of the Litigation Proceed Rights. Plaintiffs shall be issued the remaining fifty (50) Litigation Proceed Rights.

**5.2    Closing at Conclusion of a Claim:**
**5.2.1    Within** five (5) days of the Conclusion of a Claim, Plaintiffs shall notify Funder of the details of the Conclusion of a Claim (*e.g.,* name of case, date of Award, and Award amount) and provide Funder with Plaintiffs' Payment Affidavit. Funder will thereafter send Plaintiffs and Litigation Counsel handling the Claim, Funder's Payment Affidavit along with Plaintiffs' Payment Affidavit.

**5.2.2** If either Funder or Plaintiffs question(s) the integrity or reasonableness of the others' payment affidavit, the parties will resolve the dispute by binding mediation in Miami-Dade County, Florida, by a mediator agreed to by the parties. If Funder and Plaintiffs cannot agree on a mediator, their legal representatives will jointly request that the Miami office of JAMS appoint the first available mediator to resolve the dispute. The party raising the dispute will notify the other party and Litigation Counsel within (10) days of receipt of the others' payment affidavit.

**5.2.3** Absent Litigation Counsel's receipt of notice of a binding mediation between Funder and Plaintiffs disputing either or both of their respective payment affidavits, and subject to Sections 5.2.4 and 5.2.5, within thirty (30) days of receipt of Funder's Payment Affidavit and Plaintiffs' Payment Affidavit from Funder following the Conclusion of a Claim for which there is an Award, the distribution of the Proceeds from such an Award shall be made in the following order, until the Proceeds from such an Award are exhausted:

(a) Litigation Counsel in the Florida Federal Cases shall hold in escrow 20% of the Proceeds of any Award in the Florida Federal Cases pending a court order (or agreement amongst the parties to this Agreement and Geoffrey Ittleman, Esq.) liquidating the amount, if any, Geoffrey Ittleman, Esq. may be entitled to receive in those matters;

(b) Litigation Counsel shall pay any unpaid Costs incurred in the prosecution of the particular Claim;

(c) Samuel Mandel shall receive the Proceeds of any Award in the Callmd.com case awarded for the cancelled or worthless check count, up to $50,000.

(d) Funder shall receive the amount of its Investment;

(e) Subsequent Funders shall receive the amounts of their Investments in the chronological order of their Investments;

(f) Plaintiffs shall receive the amount of the Costs paid by them; and

(g) Funders and Plaintiffs shall be paid their respective Litigation Proceed Rights from the Net Proceeds.

**5.2.4** Following a court order (or agreement amongst the parties to this Agreement and Geoffrey Ittleman, Esq.) liquidating the amount, if any, Geoffrey Ittleman, Esq. is entitled to receive in in the Florida Federal Cases, Litigation counsel shall distribute any such funds from the escrow held pursuant to Section 5.2.4(a). Any remaining funds held in escrow not distributed to Geoffrey Ittleman, Esq. shall thereafter be distributed pursuant to Sub-sections 5.2.3(b) through Sub-sections 5.2.3(g).

**5.3**    Minimum Plaintiffs Proceeds: Under no circumstances shall Plaintiffs sell more than 50 Litigation Proceed Rights (*i.e.,* Plaintiffs shall not divest themselves of more than 50% of the total Litigation Proceed Rights).

**5.4**    No Commitment for Additional Financing: Plaintiffs acknowledge and agree that Funder has not made any representation, undertaking, commitment, or agreement to provide or assist Plaintiffs in obtaining any financing, investment, or other assistance, other than the investments as set forth herein. In addition, Plaintiffs acknowledge and agree that (i) no statements, whether written or oral, made by any Funder or its Representatives on or after the date of this Agreement shall create an obligation, commitment, or agreement to provide or assist Plaintiffs in obtaining any financing or investment; (ii) Plaintiffs shall not rely on any such statement by any Funder or

its representatives; and (iii) an obligation, commitment, or agreement to provide or assist Plaintiffs in obtaining any financing or investment may only be created by a written agreement, signed by such Funder and Plaintiffs, setting forth the terms and conditions of such financing or investment and stating that the parties intend for such writing to be a binding obligation or agreement.

### 5.5    New Funder Participation

**5.5.1**  Plaintiffs can invite other potential Qualified Replacement Funders to participate in the funding of this Litigation at its sole discretion, subject to the limitations imposed by Section 5.3, provided that the existing Funder(s) are allowed to continue participate according to their Litigation Proceed Rights and this Agreement. Funder can invite additional potential funders to participate in the funding of this Litigation, but Plaintiffs, in their sole discretion, must approve both the new funder's participation and the size of its investment/Capital Commitment before the potential funder can participate. For the avoidance of doubt, no Litigation Proceed Rights shall be sold to any person unless such person joins this Agreement.

**5.5.2**  If Funder becomes an Exiting Funder before investing an additional $100,000 and Plaintiffs must obtain a Qualified Replacement Funder, Exiting Funder will provide up to 20 Litigation Proceed Rights to the Qualified Replacement Funder if it makes a Capital Commitment of at least $100,000.

### 6.0  Funder Right to Terminate Investment Without Cause

**6.1**    Termination at Any Time:  At any time, Funder may give written notice to Plaintiffs of its intention to terminate further investment in the Claim(s).  Upon giving such written notice, Funder shall retain the Litigation Proceed Rights it previously purchased and has chosen to retain, and shall be entitled to the distributions in Subsections 5.1 and 5.2.

**6.2**    Termination at Any Time with Replacement Funding: At any time Funder has the right to propose exiting the Agreement by assigning its rights and obligations to a Qualified Replacement Funder.  Such assignment requires (i) Plaintiffs' consent, which shall not be unreasonably withheld, and such consent shall be deemed to have been given if at least two-thirds of the Plaintiffs consent; and (ii) the Qualified Replacement Funder's joinder to this Agreement. The ownership of the exiting Funder's Litigation Proceed Rights will be retained by the exiting Funder or any portion of Funder's Litigation Proceed Rights may be transferred to the Qualified Replacement Funder pursuant to their agreement. Regardless of Funder's transfer of some or all of its Litigation Proceed Rights, it will still have priority (over subsequent Funders and Plaintiffs) to recover its actual Investment (*i.e.,* advancement of Costs) as provided in Subsection 5.2(a).

### 7.0  Termination for Cause

Either party may terminate this Agreement for cause if the other party commits a material breach as defined in this Section, with the consequences as specified in this Section.  After such termination, Section 4.0 and Subsection 2.2.4.2 relating to confidentiality and privilege, Subsection 2.2.3.2 relating to conflicts of interest, Subsection 2.2.5.2 relating to securitization of litigation proceed rights, and Section 9 shall remain in force.

**7.1    Material Breach by Plaintiffs:**

**7.1.1**    Material Provisions: The provisions of this Agreement relating to complete and accurate disclosure of material information about the Claim(s); to cooperation in conducting the Claim(s) and of non-impairment of the Claim(s); and to the potential award and any proceeds thereof. These provisions are the very essence of this Agreement and any breach by Plaintiffs of those provisions is presumptively material. For the avoidance of doubt, the material provisions are: Subsections 2.1.2 and 3.1.3 (relating to disclosures), Subsection 2.1.3 (no impairment), and Subsection 3.1.2 (cooperation).

**7.1.1.1** Notwithstanding Subsection 7.1.1, failure to disclose material information about the claim that supports the claim, strengthens the claim, or otherwise cannot reasonably be believed to have influenced Funder to avoid investing in the claim had it been disclosed when required is not a material breach of the disclosure provisions.

**7.1.2**    Material Breach of Other Provisions: The breach by Plaintiffs of any other provision is material if it, by itself, reduces the potential value of Funder's Litigation Proceed Rights by more than 25%.

**7.1.3**    Notice of Material Breach by Plaintiffs: If Funder believes Plaintiffs have materially breached this contract it shall promptly serve notice on Plaintiffs. If the breach can be cured, Plaintiffs then have 20 days to do so. Breaches of the following provisions cannot be cured: the failure to disclose material information not covered by Subsection 7.1.1.1 or attorney–client privilege at the time of the execution of this Agreement and the failure to disclose existing claim impairment at the execution of this Agreement.

**7.1.4**    Consequences of Material Breach by Plaintiffs: If any Plaintiff commits an incurable material breach under Subsection 7.1.1 or Subsection 7.1.2 or fails to timely cure material breach as defined therein, Funder is entitled to an immediate refund of any unapplied Committed Capital or Investment regardless of whether located in a litigation account or held as retainer funds by Litigation Counsel, and is entitled to keep its Litigation Proceed Rights. Funder shall have no further obligations under this Agreement other than the provisions that explicitly survive the termination of this Agreement. Funder may also seek damages from said breach at law or equity.

**7.1.5**    If Plaintiffs dispute the existence of a material breach, the parties will resolve the sole issue of the existence of a material breach by binding mediation in Miami-Dade County, Florida, by a mediator agreed to by the parties. If Funder and Plaintiffs cannot agree on a mediator, their legal representatives will jointly request that the Miami office of JAMS appoint the first available mediator to resolve the dispute.

**7.2    Material Breach by Funder:**

**7.2.1** Material Provisions: Funder recognizes that its representations regarding its ability to invest in the Litigation or provide any Committed Capital, its commitments to protect Plaintiffs' privileged information, and its assumption of a duty of good faith and fair dealing are of the essence of this Agreement. For the avoidance of doubt, these are the material provisions: Subsection 2.2.1 (funds), Subsection 2.2.4 and Section 4.1 (privilege and common interest), and Subsection 3.2.1 (good faith). A material breach of Subsection 2.2.1 occurs if a Funder is unable to invest any Committed Capital in a timely manner (*e.g.*, within any time frame specified). A material breach of Subsection 2.2.4 or Subsection 4.1 occurs if the disclosure results in a waiver

0019

of the privilege. A material breach of Subsection 4.1 has occurred if a judge, arbiter, or other third-party dispute resolution mechanism so rules.

**7.2.2** Material Breach of Other Provisions: The breach by Funder of any other provision is material if it, by itself, reduces the potential value of the Award or Proceeds by more than 25% as measured against the Initial Claim Value.

**7.2.3** Notice of Material Breach by Funder: If Plaintiffs believe Funder has materially breached this Agreement, Plaintiffs shall promptly serve notice on Funder. If the breach can be cured by Funder, then it has 20 days to do so.

**7.2.4** Consequences of Material Breach by Funder: If Funder commits an incurable breach under Subsection 7.2.1 or Subsection 7.2.2 or fails to timely cure a material breach as defined therein, Plaintiffs may seek damages at law or other remedy in equity. Moreover, if a subsequent Funder fails to invest any Committed Capital in a timely manner, that Funder's Litigation Proceed Rights are canceled and that subsequent Funder must promptly return its Litigation Proceed Right Certificates to the party from which they were obtained. For the avoidance of doubt, the foregoing forfeiture provision does not apply to Funder in light of the Investment it has already made.

**7.2.4.1** If Funder disputes the existence of a material breach, the parties will resolve the sole issue of the existence of a material breach by binding mediation, by a mediator agreed to by the parties. If Funder and Plaintiffs cannot agree on a mediator, their legal representatives will jointly request that the Miami office of JAMS appoint the first available mediator to resolve the dispute.

**8.0 Security Interest**

**8.1** Proceeds Account: Plaintiffs hereby irrevocably instruct, and, if further instructions are needed, will instruct, Litigation Counsel to receive any Proceeds that Plaintiffs become entitled to on behalf of Plaintiffs, and to immediately deposit all such Proceeds in the Proceeds Account. In furtherance of this provision, Plaintiffs shall provide a signed copy of the letter attached as Exhibit 3 to their Litigation Counsel.

**8.2** Security Interest in the Proceeds Account: To secure its obligation to Funder represented by the Litigation Proceed Rights owned by Funder, Plaintiffs hereby grant Funder a security interest in the Proceeds Account and any and all property therein, whether such property is in the account now or is after-acquired. Such security interest shall terminate at the earlier of Plaintiffs paying Funder the full value of Funder's Litigation Proceed Rights or the Conclusion all the Claims, if, at the Conclusion of all the Claims, Plaintiffs are not entitled to receive any Proceeds from any Defendant.

**8.3** No Other Security Interests: No Plaintiff(s) shall grant a security interest in the Proceeds Account or any Claim to anyone other than Funder without Funder's prior written consent.

**9.0 Miscellaneous**

**9.1** Governing Law: This Agreement shall be governed by Florida law.

**9.2** Forum Selection: Each of the parties hereto hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the courts of the State of Florida and of the

0020

United States of America located in the City of Miami for any actions, suits, or proceedings arising out of or relating to this Agreement and the transactions contemplated hereby, and agrees not to commence any action, suit, or proceeding relating thereto except in such courts. Each of the parties hereto irrevocably and unconditionally waives any objection to the laying of venue of any action, suit, or proceeding arising out of or relating to this Agreement and the transactions contemplated hereby in the courts of the State of Florida and of the United States of America located in the City of Miami, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit, or proceeding brought in such court has been brought in an inconvenient forum. This section does not preclude the resolution of certain disputes by binding mediation as expressly provided for in any of the foregoing sections.

Agreed to, and Accepted by:

**PLAINTIFFS:**

_____
**Edward Mandel**

_____
**Irene Mandel**

_____
**Samuel Mandel**

**FUNDER: NATIONDOM, INC.**

_____
**Vadim Nestcheret, CFO**

**VIBE MICRO, INC.**

Signed: _____

Print Name: _Edward Mandel_

Title: _CEO_

Date: _08/28/17_

Page 13 of 13

**EXHIBIT 1:   LITIGATION RIGHTS CERTIFICATE**
(following pages)



*For Value Received,* _____ *hereby sell, assign and transfer unto*

_____

_____ *Litigation Proceed Rights represented*
*by the within Certificate, subject to the terms set forth on the face of the*
*Certificate, and as more fully detailed in the Litigation Funding Agreement.*

*Dated* _____

*In presence of*

_____      _____

NOTICE: THE SIGNATURE OF THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE, IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT, OR ANY CHANGE WHATSOEVER.

## EXHIBIT 2:  SCHEDULES

### SCHEDULE A

Nationdom, Inc.  and/or its affiliates, officers and directors have been, and may still be, adverse to Defendant Shabanets concerning the disputed ownership of another entity, Global Approach ("Dispute").

### SCHEDULE B

The parties to the Dispute have engaged in settlement discussions and negotiations and have reached agreements which are intended to resolve the Dispute.

### SCHEDULE C

None.

0025

**EXHIBIT 3:**

August 28, 2017

Kathleen S. Phang, Esq.
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131

Barney C. Ales, Esq.
Barney C. Ales, LTD
4496 S Pecos Road
Las Vegas, NV 89121

Torrence E. S. Lewis, Esq.
Law Offices of Torrence E. S. Lewis
31 Churchill Rd
Penn Hills, PA, 15235

Dear Counselors:

As you should now be aware, the civil actions you are handling for one or more of the
undersigned in the following cases are being financed in part by Nationdom, Inc. ("Funder"):

- *Vibe Micro, Inc., 8Speed8, Inc., Edward Mandel v. Shabanets, et al.,* Case No. 9:15-
  cv-80999 (S.D. Fla. 2016), on appeal as *Vibe Micro, Inc. et al. v. Shabanets, et al.,*
  16-15276-A (11th Cir.);
- *In re Arbitration of Vibe Micro, Inc., as shareholder of 8Speed8, Inc. v. 8Speed8,
  Inc., and SIG Capital, Inc.,* situated in Broward County, Fla.;
- *In the Matter of 8Speed8, Inc.,* Case No. 13-2037 (Bankr. D. Nev.), on appeal as
  *8Speed8, Inc. and Vibe Micro, Inc. v. Snell & Wilmer, LLP, Igor Shabanets, SIG
  Capital, Inc., Luxor Entertainment, LLC, Karla Guarino, Payteller, LLC and the
  United States Trustee,* Case No. 2:16-CV-01531-MMD (D. Nev.), and the Rule 9011
  sanction proceeding; and
- *Mandel v. Callmd.com, Inc.,* Case No. 14-007971 (Broward County, Fla.).

We have entered into a new Agreement with Funder, attached hereto, and in
accordance with the Agreement, provide you with the following instructions for the distribution
of any and all Proceeds of any Award. All of the capitalized terms, including the preceding ones,
are defined in the attached Agreement.

Specifically, as set forth in section 5.2.3 of the Agreement, at the Conclusion of a Claim:

0026

Absent Litigation Counsel's receipt of notice of a binding mediation between Funder and Plaintiffs disputing either or both of their respective payment affidavits, and subject to Sections 5.2.4 and 5.2.5, within thirty (30) days of receipt of Funder's Payment Affidavit and Plaintiffs' Payment Affidavit from Funder following the Conclusion of a Claim for which there is an Award, the distribution of the Proceeds from such an Award shall be made in the following order, until the Proceeds from such an Award are exhausted:

(a)     Litigation Counsel in the Florida Federal Cases shall hold in escrow 20% of the Proceeds of any Award in the Florida Federal Cases pending a court order (or agreement amongst the parties to this Agreement and Geoffrey Ittleman, Esq.) liquidating the amount, if any, Geoffrey Ittleman, Esq. may be entitled to receive in those matters;

(b)     Litigation Counsel shall pay any unpaid Costs incurred in the prosecution of the particular Claim;

(c)     Samuel Mandel shall receive the Proceeds of any Award in the Callmd.com case awarded for the cancelled or worthless check count, up to $50,000.

(d)     Funder shall receive the amount of its Investment;

(e)     Subsequent Funders shall receive the amounts of their Investments in the chronological order of their Investments;

(f)     Plaintiffs shall receive the amount of the Costs paid by them; and

(g)     Funders and Plaintiffs shall be paid their respective Litigation Proceed Rights from the Net Proceeds.

Thank you for your cooperation and adherence to these terms.

Sincerely,

INDIVIDUAL PLAINTIFFS

_____
Edward Mandel

_____
Irene Mandel

_____
Samuel Mandel

VIBE MICRO, INC.

Signed: _____

Print Name: _Edward Mandel_____

Title: _CEO_____

Date: _08/28/17_____

Enclosure (Aug. 2017 Litigation Finance Agreement)
CC: Nationdom, Inc.

0027

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>Nationdom, Inc. | DEFENDANTS Vibe Micro, Inc., a Nevada corporation;<br>Edward Mandel; Samuel Mandel; Irene Mandel;<br>Michael J. Berger dba The Law Offices of Michael Jay Berger |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Fredman Lieberman Pearl LLP<br>1875 Century Park East, Suite 2230<br>Los Angeles, CA 90067 (310) 284-7350 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor    ☒ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint for Declaratory Relief Regarding Entitlement to Payment of Proofs of Claim

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 315,439.90 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>IGOR SHABANETS | BANKRUPTCY CASE NO.<br>8:19-bk-14912-TA | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Theodor C. Albert |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>08/25/2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>ALAN W. FORSLEY | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.